FLETCHER *v.* FLETCHER.

1. EXECUTORS AND ADMINISTRATORS—SERVICES RENDERED BY SON PRESUMED GRATUITOUS.

Services rendered by a son to his deceased father in his lifetime are presumed to be gratuitous in the absence of an express or implied contract for compensation.

2. SAME—PRESUMPTIONS—EVIDENCE.

Evidence *held*, sufficient to show that both the father and the son, who was married and lived apart from the father and managed the father's business, expected and understood that the son would be compensated for his services to his father.

3. SAME—SERVICES—COMPENSATION.

Where the son, who managed the father's business, during the lifetime of the father received large sums of money from the latter, totaling nearly twice as much as the other two children received, although they also rendered some service to the father, it must be *held*, that such sums were given as compensation for services rendered rather than as gifts, and a claim for such services against the father's estate was properly denied.

4. SAME—ADVANCEMENT—COMPENSATION—DESCENT AND DISTRIBUTION.

Where the son, who managed the father's business, during the lifetime of the father charged himself with one large item, but afterwards, in the same year, charged it off the books to profit and loss, and the father never objected to the same, it will be allowed to stand, as he left it, as compensation rather than as an advancement.

Appeal from Wayne; Goff (John H.), J. Submitted February 1, 1921. (Docket No. 113.) Decided March 30, 1921. Rehearing denied July 19, 1921.

Bill by Frank W. Fletcher against Frank W. Fletcher and Allan M. Fletcher, executors of the

will of George N. Fletcher, deceased, and Allan M. Fletcher and Grace Fletcher-King for an accounting. From the decree rendered, all parties appeal. Affirmed.

*H. E. Spalding* and *Henry & Henry,* for plaintiff.

*I. S. Canfield,* for defendant Fletcher.

*J. O. Murfin,* for defendant King.

CLARK, J. This case is reported in 197 Mich. 68, and in 206 Mich. 153. Reference to the former opinions is suggested. In the first case plaintiff, Frank W. Fletcher, filed a bill for an accounting of a claimed partnership of himself, his brother Allan M. Fletcher, and his father, George N. Fletcher, as George N. Fletcher & Sons. A daughter, Grace Fletcher-King, contended that there was no such partnership. The lower court found such partnership and that the father and sons were equal partners. The decree was reversed but "without prejudice to the rights of the parties hereto to have determined any claims they may have other than the existence of the general copartnership which is alleged in this bill of complaint."

In the second case a joint adventure was claimed by plaintiff, Frank W. Fletcher, and was decreed by the lower court, which decree was again reversed and the decree of this court stated:

"The decree of the circuit court for the county of Alpena, in chancery, shall be, and the same is hereby reversed and vacated, but without prejudice to the rights of any of the parties hereto to have determined on such accounting any claims for services that they may have against the estate of George N. Fletcher, provided that such account and claim for services be limited to the period be-

fore the death of George N. Fletcher, whether connected with the business of George N. Fletcher & Sons or otherwise. Services rendered after the death of George N. Fletcher, whether for services as executor or otherwise, are hereby remitted to the probate court of Wayne county."

On June 21, 1920, the cause was transferred from the Alpena circuit to the Wayne circuit. The bill of complaint was amended by adding a paragraph:

"That by the decision of the Supreme Court made in this cause on May 29, 1919, and the decree entered pursuant thereto, as complainant is advised and avers, said cause was remanded to the circuit court for the county of Alpena, in chancery, for an accounting without prejudice to the rights of any of the parties to this suit to have determined upon such accounting any claims against the estate of George N. Fletcher for services rendered prior to the death of said George N. Fletcher, whether connected with the business of said George N. Fletcher & Sons, or otherwise.

"That during the ten years next preceding the death of George N. Fletcher, complainant was in full charge of the business conducted by said George N. Fletcher under the name of George N. Fletcher & Sons and the Alpena Sulphite Fibre Company and devoted his entire time thereto and to other interests of his father and that his services during said period were reasonably worth the sum of $15,000 per year. That said services were rendered by complainant under the belief that said business of Fletcher & Sons was a copartnership and that he was an equal partner therein with George N. Fletcher and Allan M. Fletcher. That from the time of the rendition of said services until the several decisions of the Supreme Court in this cause, complainant believed that said business was either a partnership or a joint adventure in which he had a one-third interest and that the bill of complaint herein was framed in accordance

with that belief. That complainant has heretofore made no claim for compensation for said services because of his belief concerning the nature of said business."

Upon the hearing there were two questions in dispute: (1) Whether the plaintiff, Frank W. Fletcher, was entitled to compensation for his service for a period of 10 years to the time of his father's death in 1899; and (2) whether plaintiff, Frank W. Fletcher, should account for an item of $41,591, which in 1893 was charged against him on his father's books and afterwards in the same year charged off to profit and loss. The decree was against plaintiff, Frank W. Fletcher, upon the first question and in his favor upon the second. Plaintiff, Frank W. Fletcher, and defendants, Allan M. Fletcher and Grace Fletcher-King, have appealed. To the records in the other cases has been added the record on this appeal by which further facts are presented. Defendants contend that service rendered by a son to his father is presumptively gratuitous and that the evidence in the case at bar does not rebut the presumption. In considering this question we shall also treat of the equities. We do not find an express contract to pay. Then before compensation can be allowed the proofs must be found to be such that a contract can be implied. By what rule shall the proofs be measured? The correct rule is thus stated:

"In 18 Cyc., at page 412, the rule is thus laid down:

" 'The courts regard with suspicion and disfavor claims brought against a decedent's estate for personal services rendered by relatives, especially where the latter are members of his immediate family or household, as the presumption is that such services, between persons occupying such relations, are intended to be gratuitous.'

"Stress is laid by the writer in the concluding part of the paragraph on the fact that such claims are more favorably regarded when decedent and claimant do not live together. All the Michigan cases cited are, I believe, in harmony with this rule. While there need not be an express contract, in terms, the proofs must be of such a nature that one can be implied, and such proofs must overcome the presumption arising from the family relation. It is not enough to prove that the care was rendered. The proofs must go further and show that they were rendered under such circumstances as rebut the presumption that they were gratuitous and justify the inference that the daughter expected to be compensated, and the father expected to pay her for the same." *In re Hoffman's Estate,* 200 Mich. at page 470.

We apply the rule to the facts. George N. Fletcher, who died in 1899, aged 87 years, was engaged for many years in business at Alpena. He had important business interests in other States. In 1879 he and Albert Pack formed the partnership of Fletcher, Pack & Company to conduct a land and lumber business at Alpena. The term of existence of the partnership was fixed at 10 years. They were equal partners. Frank W. Fletcher worked for this firm during its existence and in 1882 became a partner and was permitted to have a one-tenth interest. Allan M. Fletcher, who also had been employed by the firm, in 1882 obtained a one-fourth interest in a mill in which the partners owned the remaining interest. The firm was organized without capital. Funds needed were advanced by George N. Fletcher and by Mr. Pack. Frank W. Fletcher had principal charge of the operations of the firm. The profits, in a sum approximating $800,000, were divided at the expiration of the partnership.

In 1889, upon the winding up of the affairs of Fletcher, Pack & Company, George N. Fletcher launched another business in the name of George N. Fletcher & Sons. His children, Frank, Allan, and Grace, were then respectively 36, 30 and 28 years of age. Mrs. Fletcher, the mother, died in 1890. The daughter, then unmarried, lived with the father and cared for his home until his death. From 1889 to 1898, Allan M. Fletcher worked at Rumford Falls, Maine, in a business in which the father was interested. Frank W. Fletcher was in general charge of the business of George N. Fletcher & Sons from its beginning until it ended with the death of the father in 1899. The business was mainly lumbering. The net profits were $290,574.48. In 1885, George N. Fletcher, for Fletcher, Pack & Company, began the construction at Alpena of a mill for the manufacture of sulphite fibre, but he took this business for himself and conducted it under the name of Alpena Sulphite Fiber Company. In 1893, all charges for construction of the sulphite fiber plant, $185,110.91, were paid from profits of the business. In 1896 the business showed a net profit of $110,000, and George N. Fletcher of this profit then took $25,000 and gave a like amount to each of his three children, and again in 1898 of the profits of this business the father took $15,-298.59 and gave a like amount to each of the three children and in that year the property of this business was taken over at a valuation, it seems, of $200,000 by a corporation, Fletcher Paper Company, having a capital stock of $200,000 fully paid. Of this stock, except a small number of shares taken by an employee, George N. Fletcher kept one-fourth and gave to each of his children one-fourth. Frank W. Fletcher was the general manager of the business of this corporation in 1898

and in 1899. He had principal charge of the sulphite fiber business from 1885 to 1889 and general charge thereafter to 1898. He also gave some attention to interests of his father in western States. During the period covered by his claim for services rendered his father, as stated, Frank W. Fletcher was married, had children and lived in his own home in Detroit apart from the father and daughter, Grace, who also lived in Detroit. Frank W. Fletcher, during those years, in addition to the amounts distributed by his father, received certain other sums from time to time generally characterized by counsel as withdrawals. In the late years of the father's life the care and management of these various interests and enterprises were upon Frank W. Fletcher, who in business was both capable and successful. The father depended upon him and knew his worth and his burdens.

Being married, having children, living apart from the father, surrendering his partnership interest in Fletcher, Pack & Company at the age of 36 years, having good business ability and training, did Frank W. Fletcher give to his father these services without expectation on his part to receive compensation, and without expectation on the part of the father to pay? This must be answered negatively. But how was he to be compensated? The proofs fairly establish the following conclusions: There was between this father and son mutual confidence. The son was permitted to withdraw and to have funds needed. The father intended that the son should have from the additions and profits of these enterprises compensation and reward. The son expected of the father compensation and return for his services. Both expected and understood that the remuneration for the services of plaintiff would be adequate, if not generous, and that the father would pay when and as he chose.

During the period for which compensation is claimed, plaintiff received from his father approximately $160,000, in which sum is not included the amount paid plaintiff upon the dissolution of Fletcher, Pack & Company but are included the item of $41,591 later referred to, the distributions from the sulphite fiber business, other withdrawals, and the stock given plaintiff in the Fletcher Paper Company which for this statement has been taken at a valuation of $50,000 but which we think much less than actual value as this business earned about 87% net profit on its capital during the five years preceding the organization of the corporation. But it is urged that these items were gifts, not compensation.

Allan M. Fletcher and Grace Fletcher also were favored by the father, but Allan was employed by the father, and Grace ministered to him in his late days. Plaintiff rendered the most important service to the father and received of the father nearly twice as much as the combined amounts received by Allan and Grace. With due regard to the relations of the parties, we think these distributions by the father were compensatory in their nature. These enterprises were regarded as family matters. No complaint seems to have been made, when, from the sulphite fiber business, on two occasions, the father distributed profits to the three children and himself in equal shares nor when, in 1898, the capital of the business was carried into the corporation and the stock divided in substantially the same manner. And the final distribution under the will of the father will give his estate substantially to his children in equal shares. For the services of the plaintiff the father has provided sufficient compensation. Entertaining this view, it is not necessary to consider the defense that the

claim is barred by the general statute of limitations which is met by a contention of plaintiff's counsel which in fairness to him should be stated:

"Where one in a mistaken view of the nature of his right, or of the proper remedy, enters upon a course of action that but for the mistake he would not have followed, equity will relieve against that mistake; and if the wrong remedy be originally pursued will not refuse relief by reason of the delay in seeking the right remedy, though that delay be greater than the period of the statute of limitations."

And it is likewise unnecessary to consider another defense that the claim is barred by the statute of non-claim, not having been presented within the statutory period to the probate court. Upon this point it is contended that jurisdiction of the subject-matter under former opinions has been retained by this court.

The item of $41,591. We shall not add to a long opinion a discussion of the facts as to this item. It seems to have been charged originally to Frank W. Fletcher and later, on his father's books, charged off to profit and loss. As Judge Goff stated, it does not appear that the father in his lifetime ever objected to such entry or requested any correction of it. It may stand as he left it.

The decree has had our careful attention. It is in all things affirmed. No costs will be awarded.

MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred. STEERE, C. J., did not sit.